IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ELIZABETH GRAMLING**<br>400 Massachusetts Ave., N.W.<br>Unit 206<br>Washington, D.C.  20001<br><br><br>**Plaintiff,**<br><br>v.<br><br>**ROBERT F. KENNEDY, JR.,**<br>**SECRETARY, U.S. DEPARTMENT**<br>**OF HEALTH AND HUMAN SERVICES**<br><br>Serve:<br>Robert F. Kennedy, Jr., Secretary,<br>U.S. Dept. of Health and Human Services,<br>200 Independence Avenue S.W.,<br>Washington, D.C., 20201<br><br>Serve: Pamela Bondi, U.S. Attorney General<br>950 Pennsylvania Avenue, N.W.<br>Washington, D.C.  20530<br><br>Serve: Jeanine Ferris Pirro, Acting United<br>States Attorney for the District of Columbia,<br>555 4th Street, N.W.<br>Washington, D.C. 20530<br><br>**Defendant.** | **Case No.:** |

**CIVIL COMPLAINT FOR EMPLOYMENT DISCRIMINATION**

      **COMES NOW** Plaintiff, **ELIZABETH GRAMLING** ("Plaintiff," "Complainant," or "Ms. Gramling"), by counsel, and hereby files this Civil Complaint against **Robert F. Kennedy, Jr., Secretary, U.S. Dept. of Health and Human Services** (collectively the "Defendant," "Agency," "HHS," or "Secretary Kennedy"), and states:

1

**JURISDICTION AND VENUE**

1. This Action is brought under the Rehabilitation Act of 1973, Section 501, *et. seq.*, as amended, 29 U.S.C. 791, *et seq.*, for unlawful disability discrimination and employment related practices perpetrated against Plaintiff including, but not limited to, disparate treatment of, and the failure to reasonably accommodate, Plaintiff, and harassment.

2. Additionally, Plaintiff alleges that she is a victim of retaliation or reprisal for having asserted her rights, privileges, and immunities under the Rehabilitation Act, with such retaliation being forbidden by 29 U.S.C. Section 791, *et seq.*, and other controlling Federal statutes, laws and regulations.

3. Federal Question jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 because this action presents a case arising under the Constitution and laws of the United States.

4. Venue is proper in this Court pursuant to 28 U.S.C. §1391(e) because the Defendant, HHS, or its Secretary, is an official resident of the District of Columbia, and all of the unlawful transactions, occurrences, and offenses related to this matter were committed in the District of Columbia.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5. From August 28, 2022 until January 20, 2025, Plaintiff, a Black female, who is a qualified individual with a disability served in the position of Executive Secretary, Immediate Office of the Secretary ("IOS"), Office of the Executive Secretary ("OES"), ES-0301. She was appointed as a Senior Executive by then U.S. President, Joseph R. Biden and served until the end of her term.

6. At all times relevant to this matter, Plaintiff's overall work performance appraisals were a Level 5 ("Outstanding") as her work product, leadership, supervisory, and execution skills were beyond reproach.

7. On or about February 1, 2023, Plaintiff orally requested a full-time telework arrangement from her then supervisor, Mr. Sean McCluskie ("McCluskie") (not disabled; no prior EEO activity known), as a reasonable accommodation under the Rehabilitation Act. At all times relevant to this matter, McCluskie served as the Chief of Staff to then Agency Secretary, Xavier Becerra.[1]

8. During that conversation, Plaintiff explained to McCluskie that she had a chronic autoimmune condition commonly referred to as "Crohn's disease," which had recently been flaring up to the degree that it had become progressively more difficult to leave her residence. Plaintiff informed Mr. McCluskie that due to her symptoms over the prior two weeks or so, she had been primarily teleworking and making her way into the office when needed for her onsite job duties, such as reviewing documents in the SCIF. After a continued brief dialogue, Mr. McCluskie said he was "very sorry" Plaintiff was having health issues, and that, "We support whatever you need; do what you need to do." Plaintiff thanked McCluskie – who, upon information and belief, teleworked on a full-time or near full-time basis – for his "understanding."

---

[1] According to Plaintiff's Position Description entitled: "Executive Secretary of the Department," ES-301, classification date: 08/09/2017, p. 4, "[i]ncumbent works under the general direction and guidance of the COS [Chief of Staff]."

9. With McCluskie's assent to Plaintiff's request for reasonable accommodation ("RA"), Plaintiff officially commenced teleworking primarily full-time as of February 1, 2023, appearing in the office only to handle those few matters that required her presence, physically..

10. Later in 2023, Plaintiff had a follow-up conversation with McCluskie to confirm her RA. McCluskie again assented to and supported Plaintiff, stating: "[m]ake sure you have what you need."

11. On or about October 17, 2023, Plaintiff submitted a written Confirmation of Request for Reasonable Accommodations (the "RA Confirmation Request") *via* email to Antonio McKoy (no disability; no prior EEO activity), IOS RA Coordinator (GS-0343-14), on the form provided by the Agency. By the RA Confirmation Request, Plaintiff sought formal affirmation of the very full-time telework arrangement approved by McCluskie, including the flexibility of appearing in the office as necessary and/or when able and required. Plaintiff's RA Confirmation Request was duly supported by medical evidence, correspondence from Plaintiff's treating physicians supporting her RA request, and authorizations for the disclosure of medical records/information by her physicians, executed by Plaintiff.

12. On or about November 6, 2023, Angela Ramirez ("Ms. Ramirez" or "Ramirez") (not disabled; no prior EEO activity), who served as the Deputy Chief of Staff, Immediate Office of the Secretary ("IOS"), Office of the Secretary ("OS"), contacted Plaintiff regarding the RA Confirmation Request. Ramirez, who was not Plaintiff's actual supervisor at that time, stated that she was responding to the RA Confirmation because she was Plaintiff's "rating official." Plaintiff and Ramirez then telephonically met on November 8, 2023, as agreed.

13. On November 17, 2023, Plaintiff and Ramirez spoke again via telephone to discuss Plaintiff's RA Confirmation Request. While Ramirez did not approve Plaintiff's RA Confirmation Request, she authorized Plaintiff to have temporary reasonable accommodations. In so doing, Ramirez stated: "...pending a formal decision on your reasonable accommodation request. Specifically, you are approved to telework full-time for the next four weeks, subject to needing to come in from time to time to address needs in the office that cannot be met via telework or by others...." (Later, however, she and the Agency granted the requested RA "temporarily" over six (6) months, from 10/17/2023 - 5/1/2024, primarily because the Agency had breached controlling deadlines stated in controlling Agency policy for answering the RA Request).

19. It was also during the November 17, 2023, call that, for the first time, Ms. Ramirez raised issues with the performance of one of her direct reports, Briefing Book Coordinator Joseph Nolan. As she put it, "The binder is not going great." When Plaintiff asked for details, Ms. Ramirez shared that the Secretary's book had some missing info (e.g., the space that should have listed the name of the Counselor who was on point for a meeting read "TBD"–and that there were some grammatical errors and unresolved redlines. She asked Plaintiff to connect with the Secretary's Scheduling Director, Cynthia Palafox, for more information and to formulate a plan to address this with Mr. Nolan, which Plaintiff promptly did. Prior to Ramirez raising this purported issue on November 17, 2023, this alleged concern had not been brought to Plaintiff's attention.

20. It is critical to note that while working pursuant to the telework arrangement approved by McLuskie, Plaintiff's overall FY 23 performance appraisal was Level 5

("Outstanding"), which supports the simple fact that Plaintiff could and did perform the essential functions of her job, expertly, while teleworking full-time. Additionally, for FY 2023, Plaintiff received a $9,000.00 "performance-based pay adjustment" effective January 14, 2024.

21. On May 1, 2024, Ramirez rejected Plaintiff's RA Confirmation Request on unjustified grounds. Ms. Ramirez had no legitimate basis to deny Plaintiff's RA Confirmation.

22. Ramirez rejected Plaintiff's RA Confirmation Request; however, certain of Plaintiff's peers who were *not* disabled were approved by Ramirez and other senior managers for full-time telework from distances as far as California.

23. Plaintiff asserts that the Agency violated its own Reasonable Accommodations' policy, in various and sundry ways, including but not limited to permitting Ramirez to serve as the decision maker regarding Plaintiff's RA Confirmation Request when Ramirez was not Plaintiff's official supervisor. *ROI, 1186*.

24. On or about June 13, 2024, *via* email, Plaintiff made timely contact with the Agency's Equal Employment Opportunity ("EEO") office to complain about discrimination based upon her disability and the Agency's May 1, 2024, wrongful denial of her RA Confirmation Request.

25. Ms. Ericka Jones ("Ms. Jones") was assigned to, and did, serve as Plaintiff's EEO Counselor. Counselor Jones executed her statutory counseling functions, including the conduct of interviews with Plaintiff, as well as the responsible management official (then "RMO"), Ms. Ramirez.

26. The Agency assigned Plaintiff's matter Case No.: HHS-OS-00455-2024.

27. During the counseling period of June 13, 2024 to September 27, 2024, the "Counseling Period," Ms. Jones framed the issues for EEO counseling as follows:

> The Aggrieved Person, Elizabeth Gramling, hereinafter referred to as (AP), alleges she was subjected to discrimination and harassment based on disability (physical) and reprisal (HHS-OS-00455-2024) when:
>
> 1. On May 1, 2024, Angela Ramirez, RMO, denied AP's reasonable accommodation request to telework from home 100% of the time.
>
> 2. On July 5, 2024, Angela Ramirez, RMO, questioned AP about an administrative issue between AP and her peer, Manuel Joe Carrillo.
>
> 3. On August 21, 2024, AP learned that her request for the Family and Medical Leave Act (FMLA) was denied.

28. As reflected in the Counselor's Report, Plaintiff chronicled the actions and omissions she then perceived as acts of disability discrimination, failure to reasonably accommodate, and retaliation. *Report of Investigation ("ROI"), 100.*

29. On or about September 19, 2024, the Agency issued Plaintiff a "Notice of Right to File Formal Complaint of Discrimination" within 15 days of receipt of the Notice.

30. On or about September 24, 2024, Plaintiff duly and timely filed her Formal Complaint of Discrimination ("Formal Complaint"), incorporating by reference, *inter alia*, the matters and claims raised in her Informal Complaint and during the Counseling Period. *ROI, 003.*

31. On September 25, 2024, the Agency acknowledged receipt of Plaintiff's timely filed Formal Complaint. ROI, 005.

32. On or about October 25, 2024, the Agency issued its Letter of Acceptance of EEO Claims. *ROI, 174*. Therein, the Agency formulated the issues asserted in the Formal Complaint, as follows:

> Claim 1: Whether Complainant was subjected to disparate treatment based on disability (physical) and prior EEO activity [reasonable accommodation request dated 10/17/2023], when the following alleged incidents occurred:
>
> > a. On May 1, 2024, Complainant's accommodation request for 100% telework was denied.
> >
> > b. On August 21, 2024, Complainant's Family Medical Leave Act (FMLA) application was rejected by the first-line supervisor.
>
> Claim 2: Whether Complainant was subjected to harassment (non-sexual) based on disability (physical) and prior EEO activity, when the following alleged incidents occurred:
>
> > a. On May 1, 2024, Complainant's accommodation request for 100% telework was denied.
> >
> > b. On July 5, 2024, Complainant was reprimanded for not being available to work on July 3, 2024, the same date that she was on approved leave.
> >
> > c. On August 21, 2024, Complainant's FMLA application was rejected by the first line supervisor.

33. The Agency accepted all Claims and promised to process the same for investigation pursuant to the provisions of Title 29 Code of Federal Regulations (C.F.R.) Part 1614. *ROI, 181*.

34. On or about October 25, 2024, Plaintiff, by counsel, filed an Objection to the Agency's Acceptance based upon the Agency's disregard of Plaintiff's retaliation contentions and attempt to limit Plaintiff's prior EEO activity to Plaintiff's October 17, 2023, submission of her RA Confirmation Request. Counsel argued that Plaintiff's EEO activity must include her

8

other EEO activity, including but not limited to, her June 13, 2024, submission of her Informal EEO Complaint, and her August 5, 2024, First Amendment to her Informal EEO Complaint,.

35. On October 31, 2024, the Agency updated its Acceptance Letter, approving the following claims for investigation [footnotes from Acceptance Letter, omitted]:

> Claim 1: Whether Complainant was subjected to disparate treatment based on disability (physical) and in retaliation (prior EEO activity), when the following alleged incidents occurred:
>
> > a. On May 1, 2024, Complainant's accommodation request for 100% telework was denied.
> >
> > b. On August 21, 2024, Complainant's Family Medical Leave Act (FMLA) application was rejected by the first-line supervisor.
>
> Claim 2: Whether Complainant was subjected to harassment (non-sexual) based on disability (physical) and in retaliation (prior EEO activity), when the following alleged incidents occurred:
>
> > a. On May 1, 2024, Complainant's accommodation request for 100% telework was denied.
> >
> > b. On July 5, 2024, Complainant was reprimanded for not being available to work on July 3, 2024, the same date that she was on approved leave.
> >
> > c. On August 21, 2024, Complainant's FMLA application was rejected by the first line supervisor.

36. After the conclusion of the EEO Investigation of the "Accepted Issues" by one Linda Brownell, Plaintiff was provided with the ROI and given a notice to elect to proceed before an EEOC Administrative Judge.

37. On March 8, 2025, Plaintiff duly requested a hearing before an EEOC Administrative Judge regarding Agency No. *HHS-OS-00455-2024* ("HHS-Case No. *HHS-OS-00455-2024*"). The EEOC assigned its case number as EEOC No. 570-2025-00652.

Administrative Judge Bryan M. Douglas was assigned to preside over this matter, which is pending as of the filing of this Civil Action.

38. On or about August 27, 2025, or commensurate with the filing of this Civil Action, Plaintiff duly filed and served a Notice of Filing of Civil Action in U.S. District Court (the "Notice") in EEOC Case No. 570-2025-00652. Therein, Plaintiff requested that her Request for Hearing before EEOC Administrative Judge Douglas be withdrawn, on the strength that Plaintiff had filed this civil action in the U.S. District Court for the District of Columbia.

39. More than 180 days have elapsed since Plaintiff filed her administrative Formal Complaint.

40. Plaintiff's Formal Complaint, coupled with all allegations and background facts related thereto, is ripe for adjudication in this federal court in accordance with, *inter alia,* 29 C.F.R. 1614.407.

41. Plaintiff has duly exhausted her administrative remedies and any other conditions precedent to the prosecution of this Civil Action in the United States District Court.

42. From February 14, 2025, to the present date, Defendant Robert F. Kennedy, Jr., has served as the Secretary of HHS. He is sued here exclusively in his official capacity as the head of the Agency. Secretary Kennedy was preceded by Xavier Becerra, former Secretary, HHS.

43. During the EEO investigation, RMO Ramirez admitted that she employed the wrong legal standard in her adjudication of Plaintiff's RA Confirmation Request. On page 20 of Ramirez's Affidavit (response to Question 28) dated January 7, 2025, she contends forthrightly

10

that she "made the determination that the requested RA would result in *a hardship* to the Agency." *See ROI, 549-550*. (Emphasis supplied).

44. However, the imposition of "a hardship" upon the Agency, if the RA is granted, is *not* the legal test. See *United States Postal Service,* EEOC No. 05910506, XII 79-80 (Aug. 1, 1991) (no "undue hardship" to allow plaintiff to work permanently in a light-duty position when defendant had allowed another employee the same accommodation).

45. The Agency, by and through Ramirez, *et al.*, never ascertained that approving Plaintiff's RA Confirmation Request would constitute an "undue hardship" upon the Agency because none existed. As a matter of law, the Agency violated the Rehabilitation Act or otherwise acted in an arbitrary or capricious manner in rejecting Plaintiff's RA Confirmation Request.

46. In denying Plaintiff's RA Confirmation Request, the Agency also violated its own Reasonable Accommodations policy because that policy only allows denial of duly submitted RA Confirmation Requests where they impose an "undue hardship" upon the Agency. *See ROI, 1181.*[2] That violation creates an inference of discrimination.

47. RMO Ramirez sought to bolster her May 1, 2024, discriminatory denial of Plaintiff's RA Confirmation Request by manufacturing false or misleading claims against Plaintiff.

48. In addition to the meritless contention raised by Ramirez on November 17, 2023 (about Joseph Nolan), on July 3, 2024, (one day before the July 4, 2024 Holiday) Manuel Joe

---

[2] According to Agency Policy, HHS EEO, 4.3: "[a]s the nation's principal agency for protecting the health of all Americans and providing essential human services, HHS continuously endeavors to be a model employer. HHS is particularly sensitive to the needs of People [sic]with Disabilities, a diverse segment of the American Public and critical members of our workforce." *ROI, 1182*. Here, the Agency violated this provision of its own policy as well.

11

Carrillo ("Mr. Carrillo" or "MJ"), a peer of the Plaintiff, and loyal direct report of Ms. Ramirez, falsely claimed that Plaintiff or her staff were unable to secure the HHS Secretary's signature on an allegedly critical document.[3] Such false claims were adopted by Ms. Ramirez and presented to Plaintiff as a reprimand, and/or evidence of alleged substandard work performance as a senior manager, on July 5, 2024, some twenty-one (21) days after Plaintiff made EEO contact in this case.

49.   Mr. Carrillo, acting as a surrogate or agent of Ramirez, claimed that he was forced to directly contact the Secretary's immediate staff to secure the Secretary's wet-ink signature while the Secretary was attending a wedding. Mr. Carrillo's contentions strain credulity and are simply false for the following reasons and others.

50.   First, Plaintiff was on approved annual leave on July 3, 2024. As such, she had no actual responsibility for overseeing the handling of the issue at hand.

51.   Second, Mr. Carrillo and WHL negligently waited until the 11th hour on the day prior to the July 4th holiday to secure the Secretary's signature on non-critical documents.

52.   Third, issues of this caliber are actually addressed by employees three (3) levels below Plaintiff; therefore, whatever occurred may hardly be ascribed to Plaintiff as a Senior Executive.

53.   Fifth, Mr. Carrillo claims he attempted to contact Plaintiff on July 3, 2024, *via* telephone; however, if he actually called the Plaintiff, he did not leave any voicemail message, and Plaintiff has no record of any missed calls from Mr. Carrillo or his staff.

---

[3] Mr. Carrillo's then official title was: "HHS White House Liaison, Immediate Office of the Secretary."

54. Sixth, the WHL team submitted an incomplete package of documents for signature on the morning of July 3rd, and it did not provide corrected documents until almost 5:00 p.m.

55. Seventh, Plaintiff's team suggested a viable alternative, which was to have the package signed *nunc pro tunc* on 7/5/24; however, Mr. Carillo falsely insisted that the documents needed to be signed on 7/3/24.

56. Eighth, when Plaintiff's team was in the process of completing the task despite Mr. Carrillo's unreasonable demands, they learned that Carrillo had secured the Secretary's wet signature on the package via improper, unorthodox means.

57. Ms. Ramirez then used Mr. Carillo's manufactured episode aforestated to reprimand Plaintiff and support her ongoing false contention that Plaintiff's request for reasonable accommodations was unjustified because Plaintiff needed to be physically present in the office to supervise her staff, which contention was knowingly false when made by Ms. Ramirez. Ms. Ramirez is using this alleged episode to harass and/or retaliate against Plaintiff.

58. Plaintiff's similarly situated peers who did *not* engage in EEO-protected activity were not reprimanded, or falsely accused of dereliction of duty or other such leadership defalcations.

59. Ramirez continued to harass or retaliate against Plaintiff. On July 31, 2024, Plaintiff duly submitted her application under the Family Medical Leave Act ("FMLA") (the "FMLA Application"). The FMLA Application was submitted less than two (2) months after Plaintiff filed her Informal EEO Complaint. By her FMLA Application, Plaintiff sought "intermittent" leave based upon unforeseen, episodic "flare-ups" stemming from her Crohn's

Disease. As a part of the FMLA Application, Plaintiff's Gastroenterologist, Nikiya Asamoah-Clark, opined that Plaintiff will be absent from work on a "medically necessary" basis due to "episodes of incapacity [that] are estimated to occur one to three times per month and are likely to last approximately three to five days per episode."

60. On August 21, 2024, Plaintiff learned for the very first time that her FMLA Application was rejected by Ramirez because Plaintiff allegedly failed to "provide the supervisor a schedule for the FMLA request," or "how she would request to take the FMLA within her schedule." The Agency's response not only connoted its denial of Plaintiff's FMLA Application, or significant delay in processing her Application, but is pretextual and harassing on the strength that no prior leave "schedule" can be provided for unforeseen Crohn's "flare-ups." And, Dr. Asamoah-Clark's certification (attached to the Application) provided the Agency with more than sufficient medical information to approve the request, or if necessary, a factual basis for submission of further inquiries to Dr. Asamoah-Clark.

61. Moreover, the Agency's denial arose some sixteen (16) days after Plaintiff filed her First Amendment to her Informal Complaint.

62. The Agency by and through RMO Ramirez and others known and unknown engaged in other intentional acts and omissions designed to harass and/or retaliate against Plaintiff.

63. Plaintiff has engaged in the following EEO-protected activity, relevant to this action:

    a. October 17, 2023 - Plaintiff submitted her RA Confirmation Request;

    b. November 6-17, 2023, Plaintiff communicated with Ramirez regarding Plaintiff's RA Confirmation Request;

14

        c.      June 13, 2024, Plaintiff filed her Informal EEO Complaint and made contact with the Agency's EEO Counselor;

        d.      August 5, 2024, Plaintiff filed her First Amendment to her EEO Informal Complaint;

        e.      August 21, 2024, Plaintiff filed her Second Amendment to her EEO Informal Complaint;

        f.      September 24, 2024, Plaintiff filed her Formal EEO Complaint;

        g.      Other acts executed by Plaintiff wherein she asserted her rights under the Rehabilitation Act.

64. Plaintiff has engaged in EEO activity in various and sundry particulars as stated herein and suffered material adverse action and injury at the hands of the RMO and the Agency as a result.

65. The Agency is liable under the Rehabilitation Act for the aforestated harassment and discrimination because it knew, or should have known, of the disability discrimination, unlawful denial of Plaintiff's RA Confirmation Request, or harassment; however, it failed to take prompt and effective remedial action. Instead, it did just the opposite. It condoned, ratified, and otherwise allowed the racially harassing and discriminatory behavior to continue in violation of the Rehabilitation Act, including the Agency's own anti-discrimination and anti-harassment, and other relevant policies and regulations.

66. As a result of Plaintiff's good faith Formal Complaint and opposition to disability harassment or discrimination, the Agency, by and through its senior managers and executives and others colluding with them, has engaged in other acts and/or omissions constituting unlawful

retaliation in violation of the Rehabilitation Act, including the Agency's anti-retaliation regulations.

67. Plaintiff's non-disabled peers, who were similarly situated, were treated differently from Plaintiff - they were not treated disparately or harassed by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

68. Plaintiff's peers, who were similarly situated but had not engaged in EEO activity, were treated differently from Plaintiff - they were not retaliated against by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

### COUNT I (VIOLATION OF REHABILITATION ACT - HOSTILE WORK ENVIRONMENT)

69. Plaintiff incorporates every allegation set forth in paragraph nos. 1-68.

70. Plaintiff was harassed because of her disability by Defendant through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, and the cumulative effect of such actions, contextually.

71. The discriminatory statements, threats, and other conduct alleged herein were unwelcome, sufficiently severe or pervasive to detrimentally affect Plaintiff and were perceived or viewed by Plaintiff as subjectively hostile and abusive and would be viewed as such by a reasonable person.

72. Plaintiff complained numerous times to Defendant's supervisors and managers about disability discrimination, retaliation, or harassment, and she requested that corrective action be taken.

73. Defendant had actual or constructive knowledge of the ongoing discrimination, retaliation or harassment to which Plaintiff was being subjected.

74. However, Defendant's duly authorized supervisors, managers, and executives failed to take prompt and appropriate remedial action to prevent or correct further discrimination and harassment of Plaintiff.

## **COUNT II (VIOLATION OF REHABILITATION ACT - RETALIATION)**

75. Plaintiff incorporates every allegation set forth in paragraph nos. 1-74.

76. Plaintiff engaged in protected activity when she filed her Formal Complaints, and she engaged in other EEO protected activity or opposed unlawful harassment or discrimination in various and sundry ways thereafter and as stated herein.

77. As retaliation for Plaintiff filing her Formal Complaint or engaging in EEO protected activity or opposing unlawful discrimination and harassment, Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, subjected Plaintiff to various acts of retaliation as alleged herein.

78. There is a causal connection between Plaintiff's protected activity and the material adverse actions taken against Plaintiff by Defendant, through its duly authorized agents, supervisors, managers, executives, and employees, and other persons known and unknown. Indeed, the myriad acts of retaliation were perpetrated against Plaintiff on the heels of Plaintiff's participation in EEO activity, as alleged herein.

79. The material adverse actions taken against Plaintiff by Defendant's agents, supervisors, managers, and executives (and the cumulative effect of such actions within context) were knowingly executed by Defendant and would dissuade a reasonable employee from making complaints of discrimination or participating in EEO-protected activity.

80. Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, purposefully retaliated against Plaintiff for engaging in EEO-protected activity in violation of the Rehabilitation Act.

### COUNT III (VIOLATION OF REHABILITATION ACT - DISABILITY DISCRIMINATION/FAILURE TO REASONABLY ACCOMMODATE)

81. Plaintiff incorporates every allegation set forth in paragraph nos. 1-80.

82. Plaintiff was discriminated against because of her disability.

83. Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, acted intentionally, willfully, or in reckless disregard for Plaintiff's rights under the Rehabilitation Act by, *inter alia*, treating her disparately and denying her request for reasonable accommodations.

84. Plaintiff's peers, who were similarly situated, were treated differently from Plaintiff in that they were not discriminated against by Defendant or its agents, supervisors, managers, executives, employees, and other persons known and unknown.

85. The discriminatory actions and omissions committed by Defendant, through its duly authorized agents, supervisors, managers, executives, employees, and other persons known and unknown, were materially adverse and changed the terms, conditions, privileges, or immunities of Plaintiff's employment.

86. The stated reasons for the misconduct of Defendant, by and through its duly authorized agents, supervisors, managers, executives, and employees, were not the true reasons for the actions or omissions at issue, but were instead a mere pretext to hide the Defendant's discriminatory animus.

**DAMAGES**

Because of statutorily impermissible or willful, if not malicious, acts of the Defendant and its duly authorized agents, supervisors, managers, executives and employees, Plaintiff has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment, and loss of advancement pursuant to the Rehabilitation Act.  As a consequence of the unlawful and outrageous actions of Defendant through its duly authorized agents, supervisors, managers, executives, and employees, Plaintiff has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation, and mental anguish.  Plaintiff seeks recovery, compensatory, and equitable (i.e., back pay and front pay) damages, as well as attorney's fees, costs, and pre- and-post-judgment interest in the maximum amounts allowed by law.

**PRAYER FOR RELIEF**

Based upon all the allegations stated herein, Plaintiff, ELIZABETH GRAMLING, prays for: (a) back pay and front pay for the loss of income and benefits as a result of the discrimination, harassment and retaliation stated herein orchestrated by Defendant through its duly authorized agents, supervisors, managers, executives and employees; (b) compensatory damages in the maximum amount permitted under law, Three Hundred Thousand Dollars ($300,000.00); (c) an award of her attorney's fees, costs and expenses associated with this matter, plus interest; and (d) such other and further relief as this Court deems meet.

**A JURY TRIAL IS HEREBY DEMANDED**

ELIZABETH GRAMLING<br>
By Counsel

**BAKER SIMMONS**
**Attorneys at Law**
**800 Connecticut Avenue, N.W., Suite 300**
**Washington, D.C. 20006**
**Telephone: 202.775.0050  Facsimile: 202.204.5784**
**Email: richardcbaker@aol.com; baker@bakersimmonslaw.com**

By: */S/RICHARD CARNELL BAKER*
Richard Carnell Baker, D.C. Bar 451190 and VA Bar No.: 28854
Amana Thompson Simmons, Maryland Bar and VA Bar No.:41901
Counsel for ELIZABETH GRAMLING

**Dated: August 27, 2025**