**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ELIZABETH GRAMLING, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-2878 (RC) |
| | : | | |
| v. | : | Re Document No.: | 9, 10, 13 |
| | : | | |
| ROBERT F. KENNEDY, JR., | : | | |
| | : | | |
| Defendant. | : | | |

# MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT; DENYING AS MOOT DEFENDANT'S MOTION TO DISMISS COMPLAINT; GRANTING DEFENDANT'S CONSENT MOTION FOR LEAVE TO FILE EXHIBITS UNDER SEAL**

## I. INTRODUCTION

Plaintiff Elizabeth Gramling ("Plaintiff") brings this disability-discrimination action against the Secretary of the U.S. Department of Health and Human Services ("HHS" or the "Government") under the Rehabilitation Act. From 2022 to 2025, Plaintiff served as an Executive Secretary at HHS. Plaintiff alleges that, after she disclosed her disability, her supervisor approved an informal telework arrangement, and when Plaintiff later sought formal approval of that arrangement, HHS improperly denied her request. Plaintiff further alleges that HHS denied her subsequent application for leave under the Family and Medical Leave Act ("FMLA") and retaliated against her for asserting her Equal Employment Opportunity ("EEO") rights. She accordingly asserts claims for failure to accommodate, disparate treatment, retaliation, and hostile work environment. The Government moves to dismiss Plaintiff's Amended Complaint. For the reasons stated below, the Court grants in part and denies in part the Government's motion to dismiss. Plaintiff shall have 30 days from the date of the Court's accompanying order to amend any of her claims.

## II. BACKGROUND

Plaintiff suffers from Crohn's disease. Am. Compl. ¶ 8, ECF No. 11. While serving as an Executive Secretary in HHS's Immediate Office of the Secretary, Plaintiff informally requested a full-time telework arrangement from her supervisor, Sean McCluskie, because her disability had recently worsened, making it increasingly difficult for her to leave home. *Id.* ¶¶ 5, 7–8. According to Plaintiff, Mr. McCluskie agreed informally to the arrangement, and Plaintiff began teleworking on February 1, 2023, coming into the office only when necessary. *Id.* ¶ 9.

On October 17, 2023, Plaintiff formally requested confirmation of her full-time telework arrangement as an accommodation for her disability. *Id.* ¶ 11. In November 2023, Deputy Chief of Staff Angela Ramirez, who was not Plaintiff's direct supervisor but served as her "rating official," began handling the request. *Id.* ¶ 12. On November 17, Ms. Ramirez temporarily authorized full-time telework pending a final decision. *Id.* ¶ 13. The temporary arrangement ultimately remained in place for approximately six months, through May 1, 2024. *Id.* Plaintiff received a Level 5 performance rating ("Outstanding") for FY 2023 while working under the full-time telework arrangement and received a $9,000 "performance-based pay adjustment" for her work that year. *Id.* ¶¶ 6, 20.

On May 1, 2024, Ms. Ramirez denied Plaintiff's formal request for full-time telework. *Id.* ¶ 21. Plaintiff alleges that this denial violated the Agency's reasonable-accommodation policy because her request was not decided by her "official supervisor." *Id.* ¶ 23. She also alleges that other, non-disabled colleagues were permitted to telework full-time, including from locations as distant as California. *Id.* ¶ 22.

On June 13, 2024, following the May 1, 2024 denial of her telework request, Plaintiff contacted HHS's EEO office and initiated the administrative EEO process by filing an informal complaint, alleging disability discrimination based on that denial. *Id.* ¶ 24.

On July 3, 2024, while Plaintiff was on approved annual leave, a coworker, Manuel Joe Carrillo, allegedly falsely claimed that Plaintiff or her staff had failed to obtain the HHS Secretary's signature on certain documents. *Id.* ¶ 48. Ms. Ramirez purportedly adopted Mr. Carrillo's allegation and, on July 5, 2024, "presented [it] to Plaintiff as a reprimand, and/or evidence of alleged substandard work performance as a senior manager." *Id.* Plaintiff maintains that she was not responsible for the matter because she was on leave, that the documents were not actually critical, and that her staff had proposed a viable alternative for obtaining the signature. *Id.* ¶¶ 50–56. She further alleges that Ms. Ramirez used the incident to further establish the unviability of a telework accommodation and to retaliate against Plaintiff for filing an informal EEO complaint. *Id.* ¶¶ 48–58. During EEO counseling, Plaintiff amended her informal complaint to include the July 5, 2024 reprimand. *Id.* ¶¶ 24–30.

On July 31, 2024, Plaintiff submitted an application for intermittent FMLA leave based on episodic flare-ups of her Crohn's disease. *Id.* ¶ 59. On August 21, 2024, Plaintiff learned that Ms. Ramirez had rejected the application because Plaintiff had not provided a schedule for when she would take FMLA leave. *Id.* ¶ 60. Plaintiff alleges that a schedule was impossible to provide because the flare-ups were unforeseeable and that the denial came shortly after she amended her EEO complaint. *Id.* ¶¶ 60–61. During EEO counseling, Plaintiff further amended her informal complaint to include the denial of her FMLA application. *Id.* ¶¶ 24–30.

After receiving a Notice of Right to File, Plaintiff filed a formal EEO complaint on September 24, 2024. *Id.* ¶¶ 29–30. On October 25, 2024, HHS accepted for investigation Plaintiff's claims alleging disability discrimination, retaliation, and harassment arising from the denial of Plaintiff's telework accommodation, the July 5 reprimand, and the denial of her FMLA application. *Id.* ¶ 32. On October 31, 2024, HHS issued an amended acceptance letter clarifying that Plaintiff's retaliation claims were also accepted for investigation. *Id.* ¶¶ 34–35. Following the Agency's investigation, Plaintiff requested a hearing before an EEO Administrative Judge on March 8, 2025. *Id.* ¶ 37.

In August 2025, however, Plaintiff filed this action and withdrew her request for an administrative hearing, asserting that more than 180 days had elapsed since she filed her formal EEO complaint. *Id.* ¶¶ 36–41. Plaintiff's Complaint asserted claims under the Rehabilitation Act for retaliation, failure to accommodate, disparate treatment discrimination, and hostile work environment. *See* Compl., ECF No. 1. Plaintiff alleged that HHS discriminated against her because of her disability by denying her request for a telework accommodation, reprimanding her on July 5, and denying her application for FMLA leave. *See id.*

In January 2026, the Government moved to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Def.'s Mot. Dismiss Compl. at 6, ECF No. 10. The Government also moved to file certain exhibits under seal, a request to which Plaintiff consented. *See* Def.'s Mot. File Exs. Under Seal, ECF No. 9. Plaintiff subsequently filed an Amended Complaint pursuant to Federal Rule of Civil Procedure 15, asserting the same claims but adding additional factual allegations concerning the challenged conduct. *See* Am. Compl. Defendant now moves to dismiss the Amended Complaint for failure to state a claim. Def.'s Mot. Dismiss Am. Compl. ("Def.'s Mot. Dismiss"), ECF No. 13.

## III. LEGAL STANDARD

A complaint will survive a Rule 12(b)(6) motion to dismiss if it contains a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and while "detailed factual allegations" are not necessary, the plaintiff must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). Thus, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Courts "accept as true all of the complaint's factual allegations and draw all reasonable inferences in favor of the plaintiffs." *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 272 (D.C. Cir. 2018). A claim is considered plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## IV. ANALYSIS

Plaintiff alleges that HHS took three principal adverse actions against her during the course of her employment: (1) denying her request for a formal telework arrangement as a reasonable accommodation; (2) reprimanding her over a workplace incident on July 3, 2024; and (3) denying her application for FMLA leave. Based on these actions, Plaintiff asserts several claims under the Rehabilitation Act. First, she contends that HHS failed to reasonably accommodate her disability by denying her telework request. Second, she contends that HHS

subjected her to disparate treatment based on her disability, alleging that non-disabled employees were permitted to telework. Third, she alleges that HHS retaliated against her for engaging in protected activity by denying her telework request, reprimanding her, and denying her FMLA application. Finally, she contends that HHS's actions were sufficiently severe or pervasive to constitute a hostile work environment.

The Government moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. As a threshold matter, however, the Court must determine which materials outside the pleadings, if any, it may properly consider in resolving the motion. The Court therefore first addresses the Government's submissions outside the pleadings before turning to the sufficiency of Plaintiff's claims.

**A. Matters Outside the Pleadings**

The Government submits several documents in support of its motion to dismiss. Ordinarily, in evaluating the sufficiency of a complaint under Rule 12(b)(6), a court considers only the allegations contained within the four corners of the complaint, accepts those allegations as true, and construes them in the light most favorable to the plaintiff. *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, 370 F. Supp. 2d 213, 214 (D.D.C. 2005) (*citing Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1227 (D.C. Cir. 1993)). If, however, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d). Matters that are *not* considered "outside the pleadings," and thus do not turn a motion to dismiss into one for summary judgment, include: "the facts alleged in the complaint, documents attached as exhibits to the complaint, documents incorporated by reference in the complaint," and "documents upon which the plaintiff's complaint necessarily relies," even if those documents necessarily relied upon are produced by

the defendant in a motion to dismiss. *Wiley v. Prudential Ins. Co. of Am.*, 201 F. Supp. 3d 176, 180 (D.D.C. 2016) (simplified); *see Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009). A complaint "necessarily relies" on a document when it quotes from and discusses the document extensively. *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013) (citation modified).

The documents submitted by the Government appear to be drawn from the EEO office's investigation into Plaintiff's discrimination claims, including the agency's report of the investigation. *See* Def.'s Exs. A–E. They include three letters from Ms. Ramirez to Plaintiff concerning Plaintiff's requests for a telework arrangement and FMLA leave, as well as witness affidavits from Ms. Ramirez and HHS employee Lisa Parker. *See id.* The Amended Complaint, however, incorporates only a limited portion of those materials, specifically, a portion of Ms. Ramirez's witness affidavit. *See* Am. Compl. The Amended Complaint quotes and discusses the portion of Ms. Ramirez's affidavit responding to an inquiry regarding Plaintiff's request for telework, which appears on pages 19–21 of the affidavit. *See id.* ¶ 43; Def.'s Ex. E at 19–20. The Court may therefore consider that portion of Ms. Ramirez's affidavit without converting the Government's motion into one for summary judgment.

The Court will not, however, consider the Government's remaining exhibits. Although the Amended Complaint references the events discussed in those documents, it does not quote from, incorporate, or otherwise rely on the documents themselves in asserting Plaintiff's claims. *See* Am. Compl. ¶¶ 5–68. The remaining exhibits therefore constitute matters outside the pleadings that the Court generally may not consider on a motion to dismiss. *See Moore-Davis v. U.S. Dep't of the Navy*, 694 F.Supp.3d 116, 123 (D.D.C. 2023) (declining to consider the administrative record from employee's EEO proceedings because "in deciding a motion to

dismiss, the Court generally may not consider materials outside the pleadings, including the administrative record." (simplified)). This is particularly true where, as here, the defendant offers the documents to dispute the plaintiff's version of events, and considering the documents would require the Court to resolve factual disputes at the pleading stage. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("If the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims."). Therefore, in resolving the Government's motion to dismiss, the Court considers the allegations contained in the Amended Complaint and the limited portion of Ms. Ramirez's witness affidavit expressly incorporated by reference therein. With that settled, the Court turns to addressing the sufficiency of Plaintiff's claims.

### B. Plaintiff's Claims

#### 1. Exhaustion

The Government first argues that the Amended Complaint includes allegations concerning conduct that occurred before April 29, 2024, and that any claims based on such conduct are unexhausted because Plaintiff did not initiate contact with an EEO counselor within 45 days of their occurrence. *See* Def.'s Mot. Dismiss at 12–13; 29 C.F.R. § 1614.105(a)(1) (requiring an aggrieved person who believes that she has been discriminated against based on disability to consult an EEO Counselor within 45 days of the alleged discriminatory conduct before filing a complaint). Because Plaintiff first contacted an EEO counselor on June 13, 2024, the Government contends that any claims arising from conduct before April 29, 2024 (45 days prior), are unexhausted and thus must be dismissed. *See* Def.'s Mot. Dismiss at 12–13. In

particular, the Government appears to argue that Plaintiff's allegations concerning conversations with Mr. McCluskie in February 2023 and sometime later in 2023—during which Plaintiff allegedly informed him of her disability and he purportedly made statements supporting Plaintiff's informal request for telework—do not merely provide background but instead describe an unexhausted claim concerning an informal telework arrangement. *See* Def.'s Reply at 3, ECF No. 15 (citing Am. Compl. ¶¶ 8, 10). Plaintiff responds that she is not asserting any independent claims based on conduct predating April 29, 2024, but instead included those allegations solely as background for her claims arising from HHS's actions beginning in May 2024. *See* Pl.'s Opp'n Mot. Dismiss at 24–26, ECF No. 14.

The Court reads the Amended Complaint consistent with Plaintiff's clarification. *See* Am. Compl. ¶¶ 27, 32, 35 (consistently describing post-April 29, 2024 conduct as the challenged actions). The Amended Complaint does not appear to assert a separate claim based on Plaintiff's interactions with Mr. McCluskie or any other conduct occurring before April 29, 2024. Rather, those allegations provide background context for Plaintiff's timely exhausted claims concerning HHS's denial of her reasonable-accommodation request on May 1, 2024, Ms. Ramirez's purported reprimand on July 5, 2024, and the denial of Plaintiff's FMLA application on August 21, 2024. Because the Court does not construe the earlier McCluskie-related allegations as asserting independent claims for relief, the Government's exhaustion argument does not provide a basis for dismissal.

2. <u>Failure to Provide Reasonable Accommodations (Count III)</u> [1]

Because Plaintiff has exhausted her administrative remedies, the Court turns to Plaintiff's claims. Plaintiff alleges that she requested, and HHS failed to provide, a reasonable accommodation for her disability. *See* Am. Compl. ¶¶ 8–23. The Rehabilitation Act requires federal employers to "take reasonable affirmative steps to accommodate the [disabled], except where undue hardship would result." *Ward v. McDonald*, 762 F.3d 24, 28 (D.C. Cir. 2014) (quoting *Barth v. Gelb*, 2 F.3d 1180, 1183 (D.C. Cir. 1993)). To state a failure-to-accommodate claim, a plaintiff must plausibly allege that "(i) she was disabled within the meaning of the Rehabilitation Act; (ii) her employer had notice of her disability; (iii) she was able to perform the essential functions of her job with or without reasonable accommodation; and (iv) her employer denied her request for a reasonable accommodation of that disability." *Menoken v. Dhillon*, 975 F.3d 1, 7 (D.C. Cir. 2020) (quoting *Solomon v. Vilsack*, 763 F.3d 1, 9 (D.C. Cir. 2014)). In moving to dismiss, the Government does not dispute the first two elements. Instead, it argues that Plaintiff has failed to plausibly allege the third and fourth elements because (1) HHS did not deny Plaintiff a reasonable accommodation and (2) Plaintiff has not adequately alleged that "she is a 'qualified individual' within the meaning of the Rehabilitation Act." *See* Def.'s Mot. Dismiss at 18, 21–22. Neither argument is persuasive.

The Government's argument that HHS did not deny Plaintiff a reasonable accommodation relies on matters outside the pleadings. Specifically, the Government cites a May 1, 2024 letter from Ms. Ramirez to argue that HHS did not deny Plaintiff's request

[1] It is unclear whether Count III asserts a failure-to-accommodate claim, a disparate-treatment claim, or both. *See* Am. Compl. ¶¶ 81–86. The Court thus considers both claims separately, as the Government's motion to dismiss touches upon each theory at various points, and the claims, while distinct, overlap in certain respects.

altogether but instead offered her an alternative accommodation, permitting her to telework for six days per pay period. *See* Def.'s Mot. Dismiss at 18 (citing Def.'s Ex. A). The Government also appears to rely on that letter to contend that the alternative accommodation was reasonable because Plaintiff's position was unique and required significant in-office responsibilities, including obtaining in-person signatures for the Secretary and Deputy Secretary, reviewing materials in a sensitive compartmented information facility, and supervising and training in-person employees. *Id.* at 7–8 (again citing Def.'s Ex. A). As explained above, however, the Court declines to consider such documents at the pleading stage. Therefore, the Court also declines to consider arguments premised on those materials.

The Government's contention that Plaintiff has failed to plausibly allege that she is a qualified individual also fails. To prevail on her failure-to-accommodate claim, Plaintiff ultimately must establish that she was a "qualified individual" under the Rehabilitation Act, that is, that she could perform the essential functions of her position with or without a reasonable accommodation. *Menoken*, 975 F.3d at 7. But "an employment discrimination plaintiff is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss." *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Rather, a plaintiff need only plead sufficient facts to raise her right to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Moreover, "the essential duties of [an employee's] position are a question of fact" that need not be "alleged with particularity." *Floyd v. Lee*, 968 F. Supp. 2d 308, 327 (D.D.C. 2013). Accordingly, dismissal on this ground is "rare" because determining whether a plaintiff can perform the essential functions of a position ordinarily requires factual development. *Pappas v. D.C.*, 513 F. Supp. 3d 64, 94 (D.D.C. 2021) (citation modified). Such dismissal is appropriate

only where the complaint neither alleges that the plaintiff could perform the essential functions of the position nor identifies any reasonable accommodation that would enable her to do so. *Id.*

Plaintiff has done enough here. She alleges not only that she requested to continue working remotely as an accommodation for her Crohn's disease, but also that she successfully performed her job while teleworking, receiving "Level 5 ('Outstanding')" performance evaluations and a $9,000 "performance-based pay adjustment" for her work in 2023—the very year she alleges she informally teleworked on a full-time basis. Am. Compl. ¶ 20. Accepting those allegations as true and drawing all reasonable inferences in Plaintiff's favor, *see Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 539 (D.C. Cir. 2024), the Court can reasonably infer that Plaintiff could perform the essential functions of her position while working remotely. *See Mobley v. St. Luke's Health Sys., Inc.*, 53 F.4th 452, 456 (8th Cir. 2022) ("By allowing [the employee] to consistently work remotely aside from his medical condition, [the employer] implicitly demonstrated a belief that he could perform his essential job functions without being in the office all the time. Moreover, while working remotely, [the employee] continued to receive positive performance reviews, reflecting that he was able to effectively supervise his employees despite not being on site."). Those allegations are sufficient at the pleading stage to plausibly allege that Plaintiff is a qualified individual under the Rehabilitation Act. The claim thus survives the motion to dismiss.

3. Disparate Treatment Discrimination (Count III)

Plaintiff also asserts that HHS treated her differently on account of her disability. The Rehabilitation Act prohibits a federal employer from discriminating against a "qualified individual with a disability" "solely by reason of her or his disability." 29 U.S.C. § 794(a). A *prima facie* claim of disparate treatment requires proof "that (i) the plaintiff suffered an adverse

employment action (ii) because of the plaintiff's . . . disability." *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008). Thus, at the pleading stage, a plaintiff must plausibly allege that the challenged conduct "was motivated by discriminatory animus." *Boykin v. Fenty*, No. CV 10-1790, 2010 WL 11718210, at *4 (D.D.C. Dec. 17, 2010). The Government contends that Plaintiff has failed to do so. The Court agrees.

A plaintiff may plead discriminatory animus in several ways. First, she may allege "direct proof of discrimination, such as remarks indicating bias in the employment process." *Fisher v. Bessent*, No. 23-CV-00329 (CRC), 2025 WL 2779791, at *8 (D.D.C. Sept. 30, 2025) (citing *Wilson v. DNC Servs. Corp.*, 315 F. Supp. 3d 392, 400 (D.D.C. 2018)). "Second, absent direct evidence of discrimination, she can offer indirect evidence that would allow the Court to infer that the discrimination drove the adverse employment action." *Id.* (citing *Bilal v. Metro. Police Dep't*, No. 25-189, 2025 WL 1917959, at *3 (D.D.C. July 11, 2025)). "And third, she may state a claim by alleging that she was treated differently from similarly situated employees outside her protected class." *Id.* (citing *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014)). Here, Plaintiff appears to proceed under the second and third theories. However, neither supports a plausible inference of discriminatory animus in this case.

*a. Comparators*

Plaintiff first proceeds under a comparator theory, asserting that certain non-disabled HHS employees, Rachel Pryor and Jeff Nesbit, were permitted to telework full-time. *See* Am. Compl. ¶ 22. In particular, Plaintiff alleges that Ms. Pryor and Mr. Nesbit reported to Mr. McCluskie, "held positions similar to Plaintiff in every material respect," and that "[Ms.] Ramirez and/or other senior managers" approved them for full-time telework. *Id.* But "[a] plaintiff proceeding on [a] comparator theory must plead enough facts about those comparators

and the relevant context to allow a plausible inference that [s]he was treated differently because of" her protected status. *Joyner v. Morrison & Foerster LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025). Although the burden is "not onerous" at the motion-to-dismiss stage, a plaintiff must plead more than "the bald assertion that there is a similarly situated comparator." *Hollingsworth v. Vilsack*, No. 23-2427, 2024 WL 4332118, at *10 (D.D.C. Sept. 27, 2024) (citation modified). Plaintiff's allegations fall short of that standard.

The Complaint does not identify Ms. Pryor's or Mr. Nesbit's job responsibilities, explain how their positions were similar to Plaintiff's beyond the conclusory assertion that they were similar "in every material respect," or allege any facts concerning the circumstances under which they were permitted to telework. *See* Am. Compl. ¶ 21; *Doe #1 v. Am. Fed'n of Gov't Emps.*, 554 F. Supp. 3d 75, 103 (D.D.C. 2021) ("[A] plaintiff's assertion that [he] is similarly situated to others is just a legal conclusion[,] and a legal conclusion is never enough to state a claim."); *Joyner*, 140 F.4th at 532 (explaining that a plaintiff invoking a comparator theory must plead enough facts about those comparators and the relevant context to allow a plausible inference that he was treated differently because of his protected status). Instead, Plaintiff alleges only that Ms. Pryor and Mr. Nesbit were her non-disabled SES peers, reported to the same supervisor, and were permitted to telework. *See* Am. Compl. ¶ 22. Those allegations, however, are insufficient. *See Doe #1*, 554 F. Supp. 3d at 103 (plaintiff's allegation that the alleged comparator was a "counterpart" was "fatally nonspecific"). The Complaint therefore provides no factual basis from which the Court could reasonably infer that Ms. Pryor and Mr. Nesbit were similarly situated to Plaintiff. Plaintiff's disparate-treatment claim therefore cannot proceed on a comparator theory.

*b. Indirect Evidence*

Plaintiff next contends that discriminatory animus may be inferred from the circumstances surrounding Ms. Ramirez's handling of her accommodation request. Specifically, Plaintiff alleges that Ms. Ramirez denied her request "on unjustified grounds" and with "no legitimate basis." Am. Compl. ¶ 21. However, Plaintiff's own allegations acknowledge that Ms. Ramirez denied the request because she believed that permitting Plaintiff to telework full-time would impose a "hardship" on the agency. *See id.* ¶ 43. Plaintiff nevertheless identifies several circumstances that she contends permit an inference that the denial of her accommodation request was motivated by discriminatory animus. Considered individually or collectively, those allegations do not plausibly support such an inference.

Plaintiff first relies on Ms. Ramirez's witness affidavit, in which Ms. Ramirez described the burden that Plaintiff's request would impose on the agency as a "hardship," rather than using the term "undue hardship" employed in the applicable legal standard. *See* Am. Compl. ¶¶ 44–46; *Ward*, 762 F.3d at 28 (explaining that the Rehabilitation Act requires the Government to take reasonable affirmative steps to accommodate the disabled unless it would cause "undue hardship"). Plaintiff contends that Ms. Ramirez's use of the wrong legal standard permits an inference of discriminatory animus. Am. Compl. ¶ 46 & n.2. It does not. Nothing in the Amended Complaint plausibly suggests that Ms. Ramirez's use of the term "hardship," rather than "undue hardship," reflected discriminatory bias. To the contrary, Ms. Ramirez used the term "hardship" in response to a question that itself used that term.[2] *See* Def.'s Ex. E at 19. Moreover,

[2] Ms. Ramirez was asked the following: "If the reason for the denial/partial denial of [Plaintiff's] [reasonable accommodation] request was due to a determination that granting the request[] . . . would create a *hardship* for the agency, please explain (a) by whom the determination was made that the [request] would result in *hardship* to the agency, (b) what information was reviewed in making the determination that the [request] would result in a

Ms. Ramirez did not merely invoke "hardship" as a conclusory justification; she identified specific reasons supporting her conclusion that Plaintiff's requested accommodation would burden the agency. *See* Def.'s Ex. E at 20–21 (Ms. Ramirez identifying specific reasons for declining the accommodation request). Ms. Ramirez's omission of the word "undue" therefore does not plausibly support an inference of discriminatory animus.

Plaintiff next points to Ms. Ramirez's alleged misrepresentation concerning the July 5, 2024 reprimand. Am. Compl. ¶ 48. According to Plaintiff, Ms. Ramirez adopted a co-worker's false statement that Plaintiff or her staff failed to obtain the HHS Secretary's signature on an important document. *Id.* But, as alleged, that incident involved a separate workplace matter that was initially brought to Ms. Ramirez's attention by another employee, occurred more than two months after the challenged accommodation decision, and bore no apparent connection to Plaintiff's disability. *See* Am. Compl. ¶¶ 48–57. Those allegations instead provide an obvious, nondiscriminatory explanation for Ms. Ramirez's conduct, namely, that after another employee reported a workplace issue to her, Ms. Ramirez presented that issue to Plaintiff as a performance concern. *See Boatwright v. Jacks*, 239 F. Supp. 3d 229, 232–33 (D.D.C. 2017) ("[W]hen there is an obvious alternative explanation for the official action, purposeful, invidious discrimination is not a plausible conclusion." (citation modified)). Plaintiff therefore has not plausibly alleged that the July 5 incident reflected discriminatory animus.

Finally, Plaintiff argues that HHS violated its own reasonable-accommodation policy by allowing Ms. Ramirez, rather than Plaintiff's official supervisor, to decide her accommodation

---

*hardship*, and (c) the specific nature of the *hardship* that would have resulted had [Plaintiff's] [request] been granted." Def.'s Ex. E at 19 (emphasis added). In turn, Ms. Ramirez responded: "I made the determination that the requested [reasonable accommodation] would result in a *hardship* to the Agency. . . . " *Id.* at 20 (emphasis added).

request. *See* Am. Compl. ¶ 23. But an employer's failure "to follow its own regulations and procedures, alone, may not be sufficient to support" an inference of discriminatory animus. *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting *Johnson v. Lehman*, 679 F.2d 918, 922 (D.C. Cir. 1982)). Absent evidence that the plaintiff was treated differently because of her protected status or that the employer did not similarly depart from the policy in other cases, "[a] defendant's failure to follow its own policy is not probative of discriminatory animus." *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007); *Fischbach*, 86 F.3d at 1183 (holding that an employer's departure from its own policy did not support an inference of discrimination where that departure had become its "usual procedure"). Plaintiff alleges no such differential treatment here. She does not allege that HHS followed its policy for non-disabled employees but departed from it in her case. Nor does she otherwise allege facts suggesting that the purported departure was motivated by her disability. The alleged policy violation therefore does not support a plausible inference of discriminatory animus.

* * *

In sum, even taken together, Plaintiff's allegations do not plausibly support a reasonable inference that any challenged employment action was motivated by discriminatory animus. Plaintiff's disparate-treatment claim therefore fails.

4. Retaliation (Count II)

Plaintiff also alleges that HHS retaliated against her for engaging in protected activity. Specifically, she appears to contend that HHS retaliated by denying her reasonable-accommodation request, reprimanding her, and denying her FMLA application. [3]

To state a claim for retaliation under the Rehabilitation Act, a plaintiff must plausibly allege that "she suffered (i) a materially adverse action (ii) because . . . she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (citation omitted). A "materially adverse action" is one that well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Bain v. Office of Attorney General*, 648 F. Supp. 3d 19, 55 (D.D.C. 2022) (quoting *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 68 (2006)). The standard is objective and reaches only significant harms; it does not encompass "minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like." *Id.* (simplified) (quoting *Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013)). Typically, a materially adverse action "involves a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Id.* (simplified) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). Therefore, "not everything that makes an employee unhappy is an actionable adverse action." *Bridgeforth*, 721 F.3d at 663.

[3] The Court notes that Plaintiff's Amended Complaint is not entirely clear as to which particular actions she contends were retaliatory. Count II merely states that the alleged retaliatory acts are "alleged therein," apparently referring to the remainder of the Amended Complaint. *See* Am. Compl. ¶ 77.

The Government does not dispute that Plaintiff engaged in protected activity. *See* Def.'s Mot. Dismiss at 18–21. Instead, it argues that none of the three actions identified by Plaintiff—the denial of her reasonable-accommodation request, her alleged reprimand, and the denial of her FMLA application—constitutes a materially adverse action for purposes of a retaliation claim. *See id.* The Court agrees in part.

To the extent Plaintiff contends that HHS retaliated against her for requesting a reasonable accommodation by denying that request, that theory fails. A plaintiff generally may not premise both a failure-to-accommodate claim and a retaliation claim on the same request for, and denial of, a reasonable accommodation. *See Prescott–Harris v. Fanning*, No. 15-1716, 2016 WL 7223276, at *8 (D.D.C. Dec. 12, 2016) ("Notably, the denial of a request for accommodation cannot by itself support a claim of retaliation based on the request."); *see also Foster v. Driscoll*, No. 23-1409, 2025 WL 1100028, at *4 (D.D.C. Apr. 14, 2025) (collecting cases).

Here, Plaintiff's alleged protected activity is her request to telework, and the alleged retaliatory action is HHS's denial of that request. But that same request and denial form the basis of Plaintiff's failure-to-accommodate claim. *See supra* Part IV.B.2. Because the Court has already concluded that Plaintiff has plausibly alleged a failure-to-accommodate claim based on HHS's denial of her requested accommodation, she may not also maintain a retaliation claim based on that same request and denial; otherwise, it would be duplicative. *See Floyd v. Lee*, 968 F. Supp. 2d 308, 334 (D.D.C. 2013) ("[I]f the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled."). Moreover, Plaintiff has not plausibly alleged that Ms. Ramirez's purported reprimand constituted a materially adverse action. The Amended Complaint alleges that,

following an issue involving Mr. Carillo obtaining the Secretary's signature, Ms. Ramirez confronted Plaintiff about the incident and purportedly adopted Mr. Carillo's version of events, presenting those statements to Plaintiff as "a reprimand, and/or evidence of alleged substandard work performance." Am. Compl. ¶¶ 35, 48. Even accepting those allegations as true, Plaintiff does not allege that the criticism took the form of a formal disciplinary action or otherwise resulted in any tangible employment consequences. Rather, the allegations describe workplace criticism concerning Plaintiff's job performance. *Id.* ¶ 48. Such criticism, standing alone, ordinarily is insufficient to constitute a materially adverse action for purposes of a retaliation claim. *See Baloch*, 550 F.3d at 1199 (holding that letters of counseling and reprimand containing job-related criticism but causing no tangible consequences were not materially adverse); *see also Weber v. Battista*, 494 F.3d 179, 185–86 (D.C. Cir. 2007); *Walker v. District of Columbia*, 279 F. Supp. 3d 246, 273 (D.D.C. 2017). Accordingly, Plaintiff has not plausibly alleged a materially adverse action based on her purported reprimand.

The result differs, however, with respect to Plaintiff's allegation that HHS denied her FMLA application. The Government argues that Plaintiff cannot establish a materially adverse action because HHS ultimately approved her application after obtaining additional information from her physician. *See* Def.'s Mot. Dismiss at 20 (citing Def.'s Exs. B–D). But that argument, once again, relies on materials outside the pleadings, which the Court declines to consider at this stage. *See supra* Part IV.A. The Amended Complaint alleges that HHS denied Plaintiff's FMLA application, *see* Am. Compl. ¶ 60, and the Court must accept that allegation as true for purposes of the motion to dismiss, *see Spence*, 109 F.4th at 539.[4] Because the Government's argument

[4] The Court presumes that Plaintiff and her counsel have a good-faith basis for pressing this factual allegation in the face of the Government's contrary evidence. *See generally* Fed. R. Civ. P. 11.

relies on evidence outside the pleadings, it does not establish that Plaintiff failed to plausibly allege a materially adverse action. The Court therefore declines to dismiss Plaintiff's retaliation claim premised on the alleged denial of her FMLA application.[5]

5. Hostile Work Environment (Count I)[6]

Plaintiff also asserts a hostile work environment claim under the Rehabilitation Act. She alleges that HHS and its employees subjected her to discriminatory harassment that created an abusive working environment. *See* Am. Compl ¶¶ 69–74. The Government argues that Plaintiff has failed to state such a claim because the Amended Complaint alleges only discrete employment actions and does not plausibly allege harassment that was sufficiently severe or pervasive to alter the conditions of her employment. Def.'s Mot. Dismiss at 13–17. The Court agrees.

To state a hostile work environment claim, a plaintiff must plausibly allege that she was subjected to discriminatory harassment "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)). Whether a work environment is sufficiently hostile depends on the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a

[5] To the extent the Government argues that the FMLA denial does not constitute an adverse action because of temporal proximity or an alleged lack of harm, it has failed to develop those arguments. *See* Def.'s Mot. Dismiss at 20. They are therefore forfeited at this stage. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work." (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))).

[6] "[A]lthough neither the Supreme Court nor the D.C. Circuit has expressly held that hostile work environment claims are cognizable under . . . the Rehabilitation Act, other circuits have so held, and numerous decisions in this circuit, including of the court of appeals, have generally assumed the same." *Bain v. Off. of Att'y Gen.*, 648 F. Supp. 3d 19, 59 (D.D.C. 2022) (collecting cases).

mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. Because hostile work environment claims ordinarily involve repeated conduct rather than isolated employment actions, the standard is demanding. *See Fields v. Vilsack*, 207 F. Supp. 3d 80, 92–93 (D.D.C. 2016); *Aldrich v. Burwell*, 197 F. Supp. 3d 124, 136 (D.D.C. 2016).

Ordinary personnel actions, even if allegedly discriminatory or retaliatory, do not, without more, establish a hostile work environment. *See Franklin v. Potter*, 600 F. Supp. 2d 38, 77 (D.D.C. 2009); *Fields*, 207 F. Supp. 3d at 95; *Aldrich*, 197 F. Supp. 3d at 138. Accordingly, a plaintiff may not simply repackage the same discrete acts underlying her discrimination or retaliation claims as a hostile work environment claim unless those acts are alleged to form part of a broader pattern of severe or pervasive discriminatory harassment. *See Townsend v. United States*, 236 F. Supp. 3d 280, 312 (D.D.C. 2017); *Wade v. District of Columbia*, 780 F. Supp. 2d 1, 19 (D.D.C. 2011). "Although a plaintiff may not combine discrete acts to form a hostile work environment claim without meeting the required hostile work environment standard, neither can a court dismiss a hostile work environment claim merely because it contains discrete acts that the plaintiff claims (correctly or incorrectly) are actionable on their own." *Baird v. Gotbaum*, 662 F.3d 1246, 1252 (D.C. Cir. 2011).

Plaintiff has not plausibly alleged a hostile work environment. The Amended Complaint alleges, in conclusory fashion, that HHS and its employees engaged in "discriminatory statements, threats, and other conduct" that were "unwelcome" and "sufficiently severe or pervasive" to create a hostile work environment. Am. Compl. ¶¶ 70–71. But Plaintiff identifies no specific discriminatory statements or threats that plausibly contributed to such an environment. Nor does she allege facts describing repeated acts of discriminatory intimidation,

ridicule, insult, or other harassing conduct. *See, e.g.*, Am. Compl. ¶¶ 59, 63. Instead, Plaintiff appears to base her hostile work environment claim on the same conduct underlying her other claims: HHS's denial of her requested accommodation, Ms. Ramirez's alleged reprimand, and HHS's denial of Plaintiff's FMLA application. Even considered collectively, those actions do not plausibly amount to conduct sufficiently severe or pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. *See Baird*, 662 F.3d at 1252. Nothing in the Amended Complaint suggests that these actions were physically threatening, humiliating, or otherwise so "extreme" as to constitute a hostile work environment. *See Hill v. Assocs. for Renewal in Educ., Inc.*, 897 F.3d 232, 237 (D.C. Cir. 2018) (explaining that conduct must be sufficiently "extreme" to alter the conditions of employment).

Courts in this Circuit have rejected hostile work environment claims based on substantially similar allegations as those Plaintiff asserts. *See, e.g.*, *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *23 (D.D.C. Oct. 27, 2022), *aff'd*, No. 22-5310, 2024 WL 3219489 (D.C. Cir. June 28, 2024) (holding that the failure to accommodate plaintiff's disabilities, denial of a monetary award and pay raise, revocation of telework privileges, and termination, considered collectively, were insufficient to establish a hostile work environment); *Hussain v. Nicholson*, 435 F.3d 359, 366–67 (D.C. Cir. 2006) (affirming summary judgment where denial of promotion, denial of medical leave, poor performance evaluations, and threats of termination did not support a hostile work environment claim). Plaintiff's allegations likewise fall short of the demanding standard for a hostile work environment claim. The Court therefore concludes that Plaintiff has not plausibly alleged such a claim.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Amended Complaint (ECF No. 13) is **GRANTED IN PART** and **DENIED IN PART**; Defendant's Motion to Dismiss Complaint (ECF No. 10) is **DENIED** as **MOOT**; and Defendant's Consent Motion for Leave to File Exhibits Under Seal (ECF No. 9) is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued. Plaintiff shall have **30 days** from the date of that order to amend any of her claims.

Dated: September 23, 2026

RUDOLPH CONTRERAS
United States District Judge